IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

GRAND CANYON TRUST and SIERRA CLUB,

      Plaintiffs,

v.                                                                            No. CIV 02-552 BB/JHG

PUBLIC SERVICE COMPANY OF NEW MEXICO,

      Defendant.

MEMORANDUM OPINION
AND
ORDER GRANTING PARTIAL SUMMARY JUDGMENT ON STANDING

THIS MATTER is before the Court on Plaintiffs' Combined Motion for Partial Summary Judgment to Establish Plaintiffs' Standing [doc. #72] and Defendant's Motion to Strike Inadmissible Evidence [doc. #81]. Having reviewed all the submissions of counsel and being otherwise duly informed, the Court finds Plaintiffs' motion is well taken and it should be Granted, and Defendant's motion should be Granted in Part and Denied in Part.

## Discussion

I.     *Standard of Review*

A plaintiff's standing to bring an environmental enforcement action may properly be decided at summary judgment. *Committee to Save the Rio Hondo v. Lucero*, 102 F.3d

445 (10th Cir. 1996); *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275 (D. Colo. 1997). Such judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Concrete Works of Colo. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact by showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518. The Court must then "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

## II. *Standing Requirements*

Organizations such as the Grand Canyon Trust and the Sierra Club have "standing to bring suit on behalf of [their] members when [their] members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization[s]' purpose[s], and neither the claim asserted nor the relief requested

requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). *See also Committee to Save the Rio Hondo*, 102 F.3d at 447 n. 3. Defendants do not challenge the fact the claims asserted are germane to the Plaintiff organizations or that the relief requested requires participation of its individual members. In order to satisfy the members' standing requirements so that Plaintiffs may represent them, they must demonstrate the member: (1) has suffered an 'injury in fact'; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Laidlaw*, 528 U.S. at 180; *see also Catron County Bd. of Comm'rs v. United States Fish & Wildlife Serv.*, 75 F.3d 1429, 1432 (10th Cir. 1996); *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450 (10th Cir. 1994).

A.   *Injury In Fact*

Sierra Club member Verl Hopper filed an affidavit alleging he is a Farmington resident who regularly sees a plume of dark smoke coming from Defendant Public Service Company of New Mexico's San Juan Power Plant ("the Power Plant"). He alleges "[t]his plume often forms a layer of dirty brown clouds running along the western horizon from my house and the neighborhood up on the mesa." (¶ 4, Ex. A, Pls.' Comb. Mot.) Mr. Hopper also attached pictures he took to support these observations. He further alleges that when the wind is blowing in from the Power Plant, his nose and throat burn when he is riding his bike so that he must limit his rides. (*Ibid.* ¶ 9.) He

further states, "I am also very concerned about the pollution from the Power Plant in the air that I am breathing and how it will affect my health." *Ibid.* ¶ 8.

John Dennis Cogan avers he is a member of the Grand Canyon Trust who also lives in Farmington. (¶¶ 1-2, Ex. E, Pls.' Comb. Mot.) Mr. Cogan states he is a visual artist who cannot paint vistas in the area because of the pollution he sees coming from the Plant. Mr. Cogan recalls:

> In late January of this year (2002) I noticed the band of haze from the San Juan plant to the north of where I live (in the Foothills area) on a day that was cloudy. The color of the clouds was a steel-blue everywhere except a band where the emissions from the San Juan plant made the clouds look a dull green. Without the pollution the clouds would have been beautiful to paint. Unfortunately, the pollution marred the landscape and made it unpaintable.

¶ 7, Cogan aff.

Grand Canyon Trust member Curt Walters lives in Sedona, Arizona, but regularly visits family in La Plata, New Mexico. He is also a landscape artist who frequently paints in the Four Corners area. He avers:

> I have seen pollution from the San Juan generating station spread into the Farmington and Shiprock areas, and into the La Plata valley air shed.

¶ 4, Walters aff.

Grand Canyon Trust member Eileen Fjerstad avers she is a landscape artist living in Durango, Colorado, approximately 70 miles from the Power Plant. She states she travels frequently across the Four Corners and hikes, golfs, and paints in the area.

She has noticed "[o]ften, when returning from Albuquerque, New Mexico, the valley of the San Juan River will be filled with pollution I can see coming from the San Juan Plant."  (¶ 5, Fjerstad aff.)  She further testifies:

> [M]y view of the Needles Mountains in the Wimenuche Wilderness Area 10 or 12 miles to the east becomes quite hazy when the winds bring pollution from the south and west, the direction of the San Juan Plant.  The pollution reduces the distance visibility and obscures the normally bright sharp edges....

¶ 4, Fjerstad aff.

Sierra Club member Mark Pearson also lives in Durango and avers he can "regularly see a visible plume of pollution from the San Juan plant" and "[a]s an avid year-round hiker, during the snowy winter months around Durango I often remark on the extent of the plume from the power plant."  (¶ 2, Pearson aff.)  He further notes:

> I also notice this haze from the power plant when I travel by air from Durango to Phoenix several times each winter and pass directly over the power plant.  The haze blanketing the San Juan River valley makes me value the clean air and crystalline vistas available in other directions and discourages me from traveling to the Farmington area of recreational activities.

*Id.*

In order to sustain standing, Plaintiffs must introduce evidence that their members live, work or recreate in the geographical vicinity of Defendant's alleged pollution.  *Sierra Club v. Morton*, 405 U.S. 727, 734-5 (1972); *Public Interest Research Group of New Jersey v. Rice*, 774 F. Supp. 317, 321 (D.N.J. 1991).  They must then demonstrate that their economic or aesthetic interests will be adversely affected by

5

**Defendant's discharges.** *Public Interest Research Group of New Jersey v. Powell Duffryn Terminals*, **913 F.2d 64, 72 (3d Cir. 1990);** *Natural Resources Defense Council, Inc. v. Outboard Marine Corp.*, **692 F. Supp. 801, 807 (N.D. Ill. 1988).**

**Defendant argues not only that Plaintiffs' affidavits are insufficient to establish standing, but that they should be stricken as inadmissible evidence under Federal Rule of Civil Procedure 56. Each of the portions of the affidavits previously quoted and relied on by the Court are based on first-hand observation and therefore admissible in support of summary judgment.** *See Security Nat'l Bank v. Belleville Livestock Comm'n Co.*, **619 F.2d 840 (10th Cir. 1979);** *Rushing v. Kansas City Southern Ry. Co.*, **185 F.3d 496, 516-7 (5th Cir. 1999);** *Coplin v. Conejo Valley Unified Sch. Dist.*, **903 F. Supp. 1377 (C.D. Cal. 1995),** *aff'd*, **116 F.3d 483 (9th Cir. 1997). The previously cited affidavit testimony is based on personal observations and common sense conclusions. A witness does not have to be a neurologist, for example, to conclude someone is acting nervous or walking as though intoxicated.** *See, e.g., Cole v. United States*, **327 F.2d 360, 31 (9th Cir. 1964).**

**Plaintiffs personal observations of the environment in which they live, work, and recreate, and Defendants alleged degradation of it, have routinely been treated as competent evidence for summary judgment purposes, especially to resolve standing.** *Hall v. Norton*, **266 F.3d 969 (9th Cir. 2001);** *Texans United For a Safe Economy Educ. Fund v. Crown Cent. Petroleum Corp.*, **207 F.3d 789, 792 (5th Cir. 2000);** *Proffitt v. Municipal Auth. of Borough of Morrisville*, **716 F. Supp. 837, 840-2 (E.D. Pa. 1989),**

*aff'd*, **897 F.2d 523 (3d Cir. 1990);** *Anderson v. Farmland Indus.*, **70 F. Supp. 2d 1218 (D. Kan. 1999);** *Salmon v. Pacific Lumber Co.*, **30 F. Supp. 2d 1231 (N.D. Cal. 1998);** *Outboard Marine*, **692 F. Supp. at 806-09;** *Student Public Interest Research Group of New Jersey v. P.D. Oil & Chem. Storage*, **627 F. Supp. 1074, 1081-3 (D.N.J. 1986);** *Chesapeake Bay Foundation v. Bethlehem Steel Corp.*, **608 F. Supp. 440, 446 (D. Md. 1985). Even if the Court relied on the expressions of their health or concerns by the affiants, however, personal expressions of reasonable concern have been found sufficient to support standing.** *Laidlaw*, **528 U.S. at 181-5;** *Hall v. Norton*, **266 F.3d at 976;** *1000 Friends of Maryland v. Browner*, **265 F.3d 216, 225 (4th Cir. 2001).[1]**

**On the other hand, Defendants are correct that several of the opinions expressed by Plaintiffs' members would require expert opinion.[2]** *Higgins v. Martin Marietta Corp.*, **752 F.2d 492, 496 (10th Cir. 1985);** *Louderback v. Orkin Exterminating Co.*, **26 F. Supp.**

---

[1] Mr. Hopper's statements of concern for his health are based on his personal observations of smoke from the Plant. The Court agrees, however, that Ms. Fjerstad's statement, "Were I to live in that environment, I am sure it would not be healthy," is speculative and would require expert testimony to be admissible.

[2] Defendants object to Mr. Hopper's statements regarding mercury being emitted from the Power Plant and its connection to "warnings about eating fish caught in the local lakes and streams containing dangerous amounts of mercury." The Court agrees any such causal connection would require expert opinion. *Layton v. Yankee Caithness Joint Venture, L.P.*, 774 F. Supp. 576 (D. Nev. 1991). Plaintiffs implicitly acknowledge as much in Mr. Pearson's statements that scientists and health specialists report to the public that at least some portion of the mercury probably comes from the nearby power plants, including the San Juan Power Plant. While this would satisfy the requirement of expert testimony, it is clearly hearsay. Other statements by Plaintiffs' members that all pollution and haze in the area may be traced to the Power Plant are also an inappropriate foundation for summary judgment without expert opinion to support causation. While Ms. Stamper's affidavit, like Mr. Pearson's, references such expert testimony, it is also clearly hearsay. *Miller v. Solem*, 728 F.2d 1020 (8th Cir. 1984).

2d 1298 (D. Kan. 1998). The Court has relied on only those statements initially quoted in the text in granting summary judgment on the standing question.

### B. *Injury Traceable to Defendant*

Here also Defendant challenges the affidavits submitted by Plaintiffs on the ground the affiants are not qualified to testify as to the cause of their burning eyes and lungs. Again, however, the "fairly traceable standard necessary to support standing is not equivalent to a requirement of tort causation." *Powell Duffryn Terminals*, 913 F.2d at 72. The traceability component does not require that Plaintiffs demonstrate to a scientific certainty that Defendant's effluent alone caused the precise harm suffered by Plaintiffs. *Hall v. Norton*, 266 F.3d at 977; *Natural Resources Defense Council v. Texaco*, 2 F.3d 493, 505 (3d Cir. 1993); *Save Our Community v. United States Envtl. Protection Agency* ("EPA"), 971 F.2d 1155, 1160 (5th Cir. 1992). To sustain standing, Plaintiffs need only show a logical correlation between their physical or aesthetic injuries and the alleged discharge. *Laidlaw*, 528 U.S. at 184-5; *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 558 (5th Cir. 1996); *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 280 (D. Colo. 1997). These statements are sufficient to support standing. *Natural Resources Defense Council v. Texaco, supra; Texans United For a Safe Economy v. Crown Cent. Petroleum Corp.*, 207 F.3d at 793.

### C.     *It is Likely the Injury Will be Redressed*

Plaintiffs submitted an exhibit showing data alleged to come from Defendant that the San Juan Power Plant emitted 28,414 tons of nitrogen oxides and 21,321 tons of sulfur dioxide. Plaintiffs also assert San Juan also emits over 1,000 pounds of mercury per year, as well as particulate matter. Plaintiffs' exhibit points out the EPA has determined these particulate matter, pollutants, and mercury pose clear health risks so lesser amounts would logically appear to lessen the health risk.

Unlike the "fairly traceable" requirement, which addresses the connection between Plaintiffs' injury and Defendant's conduct, redressability focuses on the connection between Plaintiffs' injury and the judicial relief sought. *Metropolitan Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise*, 501 U.S. 252, 264-5 (1991); *Public Interest Research Group*, 913 F.2d at 73. Plaintiffs seek injunctive relief that requires PNM to install and operate at San Juan Units 3 and 4 Best Available Control Technology ("BACT"). Although an injunction requiring PNM to obtain a permit that includes BACT may not eliminate all air pollution related problems in the Four Corners region, it seems likely to reduce potentially dangerous emissions from the San Juan Power Plant. Preventing excess pollutant discharges will probably provide some redress for Plaintiffs' injuries and thus meet the redressability element of standing. *Burnett v. Spear*, 520 U.S. 154, 171 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

(1992); *Committee to Save the Rio Hondo*, 102 F.3d at 452; *Catron County Bd. of Comm'rs v. United States Fish & Wildlife Serv.*, 75 F.3d 1429, 1433 (10th Cir. 1996).

## O R D E R

Plaintiffs Grand Canyon Trust and the Sierra Club have adduced sufficient evidence to demonstrate their members are damaged by PNM's emissions from the San Juan Power Plant; those injuries are fairly traceable to the challenged discharges; and such injuries could be partially redressed by the issuance of an injunction. Partial summary judgment will therefore be GRANTED to allow Plaintiffs' standing. Defendant's motion to strike is GRANTED except as to the affidavit statements quoted in the Injury In Fact portion of this opinion.

Dated at Albuquerque this 1st day of May, 2003.

*[signature: Bruce D. Black]*
**BRUCE D. BLACK**
**United States District Judge**

**For Plaintiff:**

>Steven Sugarman, BELIN & SUGARMAN, Santa Fe, NM
>Reed Zars, Laramie, WY
>George E. Hays, San Francisco, CA

**For Defendant:**

>Robert C. Conklin, Richard L. Alvidrez, Mary Behn, KELEHER & MCLEOD, Albuquerque, NM
>Robert H. Clark, PUBLIC SERVICE COMPANY OF NEW MEXICO, Albuquerque, NM
>Henry V. Nickel, HUNTON & WILLIAMS, Washington, DC