IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

GRAND   CANYON   TRUST   and
SIERRA CLUB,

         **Plaintiffs,**

v.                                     No. CIV 02-552 BB/ACT

PUBLIC   SERVICE   COMPANY   OF
NEW MEXICO,

         **Defendant.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's motion for summary judgment on Plaintiffs' second cause of action [Doc. 31].  Having reviewed all the submissions of counsel and the applicable law, the Court finds the motion is well taken and it will be granted.

### *Standard of Review*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse*

*Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999).  Instead, the nonmoving party must present facts such that under the existing law a reasonable jury could find in its favor. *Id.*

### ***Procedural Posture of Case***

This case is a claim under the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. § 7401 *et seq.*, brought by the Grand Canyon Trust and Sierra Club ("Plaintiffs") against Public Service Company of New Mexico ("PNM") alleging significant and ongoing violations of air pollution permit emission limits and other requirements at the San Juan Power Plant ("Power Plant") located in San Juan County, New Mexico.  The complaint seeks declaratory and injunctive relief and the imposition of civil penalties.

Plaintiffs' second cause of action alleges that PNM violated the CAA by failing to obtain a federal Prevention of Significant Deterioration ("PSD") preconstruction permit prior to undertaking the construction of Units 3 and 4 at the Power Plant.  PNM has filed two separate motions for summary judgment on this second cause of action, but points out that the later of these motions will be rendered moot if the Court grants the motion under consideration in this opinion.  The essential argument made by PNM in this motion is that Plaintiffs' second claim cannot be maintained in this Court, due to the interaction between

the citizens' suit provision of the CAA, 42 U.S.C. § 7604, and the judicial review provision of the CAA, 42 U.S.C. § 7607.

### *Discussion*

PNM submitted applications to the New Mexico Environmental Improvement Agency ("NMEIA") for permits to construct Units 3 and 4 on January 31, 1975. Subsequently, the Supervisor of the NMEIA requested the Environmental Protection Agency ("EPA") determine whether Units 3 and 4 must receive PSD certificates.[1] PNM then forwarded various documents to the EPA to demonstrate various irrevocable contract commitments had been made on Units 3 and 4 and in that sense construction had commenced. NMEIA granted the requested state permits. Construction of Unit 3 was complete as of December 29, 1979, when the unit went into commercial operation. Unit 4 was complete as of April 27, 1982, when it went into commercial operation.

Plaintiffs' second claim for relief is based on their contention that PNM was required to obtain a PSD permit for San Juan Units 3 and 4 because PNM actually  commenced construction of these units after the PSD program became effective on June 1, 1975. PNM maintains this Court has no jurisdiction to consider this cause of action. PNM's argument is as follows:  (1) EPA decided in 1975 that PNM did not need PSD permits prior to constructing Units 3 and 4, because PNM had indeed commenced construction of those units

---

[1]The PSD program had just been created, by regulation, effective January 6, 1975. Under that program, if a new source of emissions (such as Units 3 and 4) had not "commenced construction" by June 1, 1975, the new source would require a PSD permit from EPA, in addition to the state permits issued by NMEIA.

before June 1, 1975; (2) EPA's decision was a "final action" for purposes of § 7607, the CAA's judicial-review provision;[2] (3) therefore, EPA's decision concerning Units 3 and 4 is reviewable only by the 10th Circuit, not by this Court or any district court; and (4) Plaintiffs' second claim in this case is, in effect, an impermissible collateral attack on EPA's 1975 decision, and must be dismissed.

Plaintiffs' first contention in response to the above reasoning is that EPA never did take any final action with respect to the PSD permits, because any decision EPA might have made was not in writing. Plaintiffs cited no persuasive authority in support of the proposition that an agency action, to be final and judicially reviewable, must be in writing.[3] Both law and logic suggest the contrary. Unwritten agency actions have been subjected to judicial review under the Administrative Procedures Act, 5 U.S.C. § § 701 *et seq. San Juan Audubon Soc'y v. Veneman*, 153 F.Supp.2d 1, 5-6 (D.D.C. 2001) (agency's individual decisions to use pesticides in certain areas constituted final agency actions reviewable in court). Determination of the finality of agency action for purposes of judicial review is to be made in a pragmatic way. *See Pennzoil Co. v. Federal Energy Regulatory Comm'n*, 645 F.2d 394, 399 (5th Cir. 1981). For example, an agency's failure to act, which is not likely

---

[2]§ 7607(b)(1) provides, in part, that a petition for review of "any other final action" by EPA "may be filed only in the United States Court of Appeals for the appropriate circuit."

[3]The only case law cited by Plaintiffs concerned situations in which a party was alleging equitable estoppel against the government, based on oral statements made by an administrative agency. *See, e.g., Heckler v. Community Health Servs.*, 467 U.S. 51, 65 (1984). The fact that oral statements cannot give rise to estoppel against the government does not mean oral decisions by an agency cannot be subject to judicial review.

to be in writing, may constitute a final agency action for purposes of judicial review.  *See Southern Utah Wilderness Alliance v. Norton*, 301 F.3d 1217, 1229 (10th Cir. 2002); *cf.* 5 U.S.C. § 551(13) (defining "agency action" to include "failure to act").  Furthermore, Plaintiffs' contention cannot be correct, as a matter of policy or common sense.  Plaintiffs' position would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing. *Cf. Sierra-Nevada Memorial Miners Hosps., Inc. v. Secretary, Dep't of Health and Human Servs.*, 1993 WL 841091 (D.D.C. 1993) (administrative decision to deny plaintiffs' petition, based on unwritten policy, subjected to judicial review despite defendant's argument that no binding policy existed).

    The test of finality of an agency action is not whether the action is memorialized in writing, but whether the agency has completed its decisionmaking process, and whether the resulting action has a direct  impact on the rights of the parties involved.  *See Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992); *see also HRI, Inc. v. E.P.A.*, 198 F.3d 1224, 1236 (10th Cir. 2000) (agency action is final if it marks the consummation of the agency's decisionmaking process, and determines rights or obligations of a party).  EPA had certainly completed its decisionmaking process here; by deciding that no PSD permits were necessary, EPA issued its final word on the subject and no further administrative proceedings were available.  *Cf. Lee Constr. Co. v. Federal Reserve Bank*, 558 F.Supp. 165 (D.Md. 1982) (agency's act of awarding contract to another was final action on plaintiff's bid).  In addition, EPA's decision directly determined PNM's legal rights and obligations, allowing PNM to

build Units 3 and 4 without first obtaining PSD permits.  Given the impact EPA's decision had, it is of no moment that EPA's decision was not a written decision.  The oral decision constituted final agency action implicating the judicial-review provision of the CAA.

Plaintiffs next argue that all of PNM's evidence tending to show that EPA did make a decision, albeit an oral one, is inadmissible.  Absent this evidence, according to Plaintiffs, PNM cannot establish that a decision was made, and cannot show that final agency action occurred.  This argument is rendered moot by the fact that the Court has denied Plaintiffs' motion to strike much of the evidence submitted by PNM concerning the PSD permit issue. PNM's evidence shows that in 1975, NMEIA asked EPA to determine whether PNM would have to obtain PSD permits for Units 3 and 4; PNM submitted documentation to EPA concerning transactions relevant to these Units; NMEIA employees recorded notes concerning telephone conversations with EPA; NMEIA wrote letters to PNM, informing PNM that EPA had determined that no PSD permit would be required for Unit 3 or Unit 4; and NMEIA issued state permits for Units 3 and 4.  [Exh. E-J, M, Mot. Sum. Jmt.]  This evidence, especially given the passage of over 25 years since the decision was made, is more than adequate to establish that EPA made a decision concerning the PSD permits and decided none were necessary for Units 3 and 4.

Based on the foregoing, it is clear EPA made a decision concerning the PSD permits, and that decision was final agency action subject to judicial review under the CAA.  The next question is whether Plaintiffs may bring this citizens' suit against PNM, claiming PNM did

not obtain PSD permits, even though EPA has decided no such permits were necessary. In other words, may Plaintiffs collaterally attack EPA's decision, by filing a citizens' suit against PNM under 42 U.S.C. § 7604 and claiming that PNM constructed Units 3 and 4 without the required PSD permits?[4]

In creating the judicial-review provisions of the CAA, Congress determined that review of an EPA final action should be had only in the appropriate circuit court, rather than at the district court level. *See* § 7607. This Court may not allow Plaintiffs to circumvent the limited review process established by Congress, by entertaining Plaintiffs' claim that PNM should have obtained PSD permits despite EPA's decision to the contrary. *See, e.g., Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1492 (10th Cir. 1997) (district court properly refused to recognize jurisdiction over plaintiffs' claim, where claim was an impermissible collateral attack on a permitting decision made by an agency; allowing such attack would permit circumvention of limited judicial review provisions of federal statute involved); *Greenpeace, Inc. v. Waste Tech. Indus.*, 989 F.2d 1174 (6th Cir. 1993) (citizen suit was collateral attack on EPA permit decision, and not allowed); *cf. Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 260-62 (10th Cir. 1989) (state-court suit was impermissible collateral attack on federal agency's decision, and contravened exclusive Court of Appeals jurisdiction over efforts to obtain

---

[4]Plaintiffs did not address this question in their brief, but since the issue concerns this Court's jurisdiction, the Court has an obligation to analyze the issue despite Plaintiffs' apparent concession of the argument.

judicial review of such decision).[5]  The Court will therefore hold the proper avenue by which to challenge the EPA decision that no PSD permits were necessary for Units 3 and 4 is not through Plaintiffs' citizens' suit against PNM, but through the judicial-review provisions of the CAA. Plaintiffs' second claim therefore may not be heard in this Court.

Plaintiffs raise two other arguments that are not relevant to this citizens' suit against PNM, but rather are concerned with the judicial-review provision of the CAA.  Plaintiffs first argue that in 1975, judicial review of EPA decisions was not limited to the various courts of appeal, but could be had in the district courts.  Since this is not an action against the EPA seeking judicial review of EPA's decision, the Court need not address the argument.  It should be noted, however, that it appears contrary to established law.  *See, e.g., Landgraf v. USI Film Products*, 511 U.S. 244, 274 (1994) (intervening statutes conferring or ousting jurisdiction are regularly applied even to pending cases, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed).  Plaintiffs also argue that the time for filing a petition for review of EPA's decision has never run, because EPA never started the applicable 60-day clock by publishing notice of its decision in the Federal

---

[5]The Ninth Circuit has allowed a citizen's suit against a private entity that was told, by a state agency, no permit would be necessary under federal Clean Water Act, 33 U.S.C. § § 1251-1376 ("CWA").  *Assoc. to Protect Hammersley v. Taylor Res.*, 299 F.3d 1007, 1012 (9th Cir. 2002).  The *Hammersley* opinion did not discuss the collateral-attack issue, and may be explained by several factors, including the following:  (1) the CWA does not provide for judicial review of state agency decisions, so there was no federal judicial-review process that would have been circumvented by the citizens' suit; and (2) the CWA does not provide for judicial review of all final actions of the EPA, such as an action deciding that no permit is necessary; instead, judicial review is limited to, among other actions, the act of issuing or denying a permit.  33 U.S.C. § 1369(b)).

Register.  42 U.S.C. § 7607(b)(1).  Since the proper arena for Plaintiffs' attempt to obtain judicial review is not in this Court, but in the 10th Circuit, the Court need not express an opinion on this question.

## **O R D E R**

Based on the above, Defendant's motion for summary judgment on Plaintiffs' second cause of action (Doc. 31) is hereby GRANTED, and Plaintiffs' second claim is DISMISSED for lack of jurisdiction.

Dated at Albuquerque this 20th day of August, 2003.


**BRUCE D. BLACK**
United States District Judge


For Plaintiff:

Steven Sugarman, BELIN & SUGARMAN, Santa Fe, NM
Reed Zars, Laramie, WY
George E. Hays, San Francisco, CA

For Defendant:

Robert C. Conklin, Richard L. Alvidrez, Mary Behn, KELEHER & MCLEOD, Albuquerque, NM
Robert H. Clark, PUBLIC SERVICE COMPANY OF NEW MEXICO, Albuquerque, NM
Henry V. Nickel, HUNTON & WILLIAMS, Washington, DC