IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

GRAND CANYON TRUST and SIERRA
CLUB,

          Plaintiffs,

v.                                    No. CIV 02-552 BB/ACT

PUBLIC SERVICE COMPANY OF NEW
MEXICO,

          Defendant.

## MEMORANDUM OPINION
### AND
## ORDER ON PLAINTIFF'S MOTION IN LIMINE

THIS MATTER is before the Court on Plaintiffs' Motion in Limine to exclude evidence (1) that continuous opacity monitors ("COMs") are not the compliance method at San Juan; (2) COM readings illegally increase the stringency standards for monitoring; and (3) specific COM readings are not the equivalent to Method 9 Readings. The Court will Grant the motion as to categories (1) and (2)  and Deny it as to (3).

### *Procedure*

Defendant correctly points out the motion in limine is a creature not recognized by either the Federal Rules of Civil Procedure nor the Federal Rules of Evidence. *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1387 (D. Kan. 1998).  It is, however, generally recognized as a procedural tool necessary to facilitate the efficient administration of

justice. *United States v. Vest*, 639 F. Supp. 899 (D. Mass. 1986), *aff'd*, 813 F.2d 477 (1st Cir. 1987); *Butler v. Dagney*, 2001 U.S. Dist. Lexis 6585 (S.D. Ind. 2001). A motion in limine provides the court with the opportunity to rule on the admissibility of evidence and thus prevents encumbering the record with irrelevant material. *McAmis v. Wallace*, 980 F. Supp. 181 (W.D. Va. 1997); *Messler v. Simmons Gun Specialties, Inc.*, 687 P.2d 121 (Okla. 1984). It is therefore the preferred practice to use this procedure to raise issues related to expert and scientific testimony prior to trial. *Alfred v. Caterpillar, Inc.*, 262 F.3d 1083 (10th Cir. 2001).

### *The Credible Evidence Standard*

Congress amended the Clean Air Act ("CAA") in 1990 and directed the EPA to enhance the monitoring of major emission sources. 42 U.S.C. §§ 7414(a), 7661b(b). The purpose of the COM is to routinely monitor compliance, and source operators are charged with maintaining their COM equipment to achieve this goal. 62 Fed. Reg. 8319 (1997); 40 C.F.R. 64, 70, 71. The 1990 amendments also allowed "credible evidence," other than the applicable test method, to be used to measure compliance with the CAA.

In 1997, the Environmental Protection Agency ("EPA") amended 40 C.F.R. parts 51, 52, 60, and 61 to allow any "credible evidence" to demonstrate compliance with the CAA. The preamble to the revisions specifically states, "these revisions make clear that enforcement authorities can prosecute actions based exclusively on any credible evidence without the need to rely on any data from a particular reference test." 62 Fed. Reg. at

8314 (1997).  The amendments contemplate reliance on any information that is reliable and specifically include COM data.  62 Fed. Reg. at 8317 and 8328; *see also Sierra Club v. Public Serv. Co. of Colo.*, 894 F. Supp. 1455, 1461 (D. Colo. 1995); Paul D. Hoburg, *Use of Credible Evidence to Prove Clean Air Act Violations*, 25 B.C. Envtl. Aff. L. Rev. 771, 789 (1997).  The EPA's Credible Evidence Rule ("CER") is thus intended to recognize the inherent relevance and enhanced credibility of certain evidence, including COM readings, but it does not alter the underlying emissions standards or other requirements of the Clean Air Act.  *Id.; Sierra Club v. Public Serv. Co. of Colo.*, 894 F. Supp. at 1458-9 (COM data constitutes competent evidence with "a high degree of probative reliability").  § 10.05 ENVIRONMENTAL ENFORCEMENT: CIVIL AND CRIMINAL 7 (Law Journal Press 2001).  It therefore makes sense to use the COM data as prima facie evidence of emission opacity compliance and, conversely, violations.  *Pub. Serv. Co. of Colo., supra; Unitek Envtl. Serv., Inc. v. Hawaiian Cement*, 1996 WL 808154 (D. Haw. 1996).

While the COM is thus relevant evidence of potential violations of the CAA, this Court does not believe, as Plaintiffs would argue, that it is irrefutable evidence.  "[T]he determination that evidence or information is credible is merely a threshold determination that the evidence or information in question is technically relevant and therefore admissible in an enforcement action."  62 Fed. Reg. at 8317-8.  There are, however, environmental and engineering conditions that may militate against using

3

COM data as conclusive proof of a CAA violation.  Daniel Riesel, *Forecasting Significant Air Act Implementation Issues:  Permitting and Enforcement*, 14 Pace Envtl. L. Rev. 129, 159-160 (1996).  Indeed, the EPA has represented to the courts that the emission standards are designed to measure major violations over time, and "the use of other evidence to document a violation must take into account the averaging requirements related to data collection by such method, the pollutant constituents measured by such method (*e.g.*, the definition of particulate matter included in Method 5), and any other limitations as to the conditions which such tests may be concluded."  Final Brief of EPA in *Clean Air Implementation Project, et al. v. EPA*, No. 97-1117 (D.C. Cir.) at 11 as quoted in Robert J. Lambrechts, *MDNR's Toolbox for Encouraging Compliance:  Title V Permits Compliance Assurance Monitoring, Periodic Monitoring, the Credible Evidence Rule and Compliance Certifications*, 9 Mo. Envtl. L. & Policy Rev. 1, 6-7 (2001).  "Accordingly, non-reference test data must evaluate emissions over the same averaging periods and under the same operating conditions as the reference test and must account for any periods of excused noncompliance."  Lambrechts, *supra* at 7.

The goals and operation of the credible evidence rule ("CER") as adopted by the EPA and implemented by the courts in *Public Service Company of Colorado* and *Unitek* are fairly summarized as follows:

> The essential purpose of CER data is to create a flexible, "common sense" approach to determine compliance with the CAA emission standards.  The reference test method data will continue to remain the "benchmark against which

4

to compare other emissions or parametric data, or engineering analyses, regarding source compliance." However, any evidence will be admissible to establish either compliance or noncompliance provided that it meets the threshold test for credibility. Thus, an enforcement action may be successfully pursued or resisted on the basis of any relevant, credible evidence, although a source may continue to establish compliance by an appropriate, properly conducted reference test method.

David Langer, *The Clean Air Act's Credible Evidence Rule:  Achieving Greater Efficiency in Environmental Regulation*, 23 Vt. L. Rev. 673, 686 (citations omitted) (1999).

## D E C I S I O N

Based on the above discussion, the Court will Grant the motion in limine to exclude evidence that is directed at showing that (1) COM's are not a proper standard to measure CA compliance; and (2) COM's create a more stringent standard than Method 9.  The Court will permit evidence that specific COM data does not meet the standard of Method 9 at PNM units 1 and 2.  The Court will also allow Defendant to introduce evidence that any particular COM measurement was contradicted by a Method 9 observation or by other scientific data which meets the criteria of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  *See* Susan Norton, *Factors for Determining Validity of Evidence in Clean Air Act Litigation*, 15 J. Land Use & Envtl. L. 235 (2000).  finally, the Court will also consider other credible evidence demonstrating any particular COM is inaccurate or that a COM reading should not be

considered evidence of a violation based on aberrant operating conditions recognized by

the Defendants' Permit or applicable State or Federal regulations.


SO ORDERED this 8th day of October, 2003.


BRUCE D. BLACK
United States District Judge


**For Plaintiff:**

Steven Sugarman, BELIN & SUGARMAN, Santa Fe, NM
Reed Zars, Laramie, WY
George E. Hays, San Francisco, CA

**For Defendant:**

Robert C. Conklin, Richard L. Alvidrez, Mary Behn, KELEHER & MCLEOD, Albuquerque, NM
Robert H. Clark, PUBLIC SERVICE COMPANY OF NEW MEXICO, Albuquerque, NM
Henry V. Nickel, HUNTON & WILLIAMS, Washington, DC